# C. AULTMAN & CO.

## v.

# JAMES A. HENDERSON.

*Sales—Engine—Contract for Shipment and Delivery of—Refusal to Accept—Omission of Condition—Fraud—Practice Act, Sec. 34—Warranty —Breach—Evidence—Damages.*

1.  An order calling for the shipment of an engine is complied with by an offer to deliver one in the town where the same was written.

2.  Evidence can not be admitted to prove that a provision was fraudulently omitted from an order, in the absence of verification by affidavit in conformity with Sec. 34 of the Practice Act.

3.  Where a contract of sale contains provisions fixing the rights of the parties thereto, in case, after trial, the machine in question fails to comply with the warranty contained therein, the purchaser can not decline to receive the same upon the ground that the year before, in other hands, it failed to work properly.

4.  A machine that has been repaired will be presumed to be in working order and it is the duty of a person ordering such a machine to give it a fair trial.

[Opinion filed February 14, 1890.]

APPEAL from the Circuit Court of Montgomery County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. LANE & COOPER, for appellants.

Messrs. T. M. JETT and A. N. KINGSBURY, for appellee.

WALL, J. This was an action of assumpsit by the appellant against the appellee.

The declaration contained a special count on a written instrument signed by the defendant, bearing date July 5, 1888, whereby he requested the plaintiff to ship to him, in care of the agent of plaintiff at Harvell, Illinois, on or before July 12, 1888, one No. 12 Monitor engine, with self guide, and the fixtures and extras usually furnished by plaintiff, in consideration whereof he agreed to receive said engine on arrival,

subject to the conditions of the warranty printed below, and to pay $600 at the time and place of delivery, and to deliver an old engine of his as additional payment. The money payment was to be made by the execution of his two promissory notes, payable at certain specified times and bearing six per cent interest, which notes were to be secured by a mortgage on the property sold. It was averred that the plaintiff furnished the engine at the time and place named in the contract, and that defendant refused to accept and pay the money or execute the notes and deliver the old engine.

The pleas were, first, the general issue; second, a special plea averring a breach of warranty in this, that the engine was not well constructed and would not work properly. The case was tried by the court, a jury being waived, and the issues were found for the defendant, upon which judgment went against the plaintiff for cost. Error is now assigned upon the rulings of the court in reference to the admission of evidence and in s ) finding the questions of fact arising on the evidence.

The plaintiff proved the written order set out in the declaration and that an engine such as described in the order was at the place named on and before the day specified. It appeared that this engine was there when the contract was made and the order signed, and that as a matter of fact the contract was with reference to this particular engine. It is insisted by appellee that the plaintiff failed to prove a compliance with the order which called for the shipment by the plaintiff to the place named of the engine described, and that such a request would not be complied with by furnishing at the place named an engine which was already then in the plaintiff's possession.

The order does not specify where the engine is to be shipped from nor by what route it shall come, and manifestly these were matters of no importance to the defendant if he got, at the time and place named, the article he bargained for.

By the mere letter of the order it required the plaintiff *thereafter* to ship to the place named, by the route to be selected by the plaintiff, the engine therein described. This would imply that the agency of a carrier was to be called in

Aultman & Co. v. Henderson.

aid and that the engine was thereby to be transported some distance, long or short, to the place named—but it would hardly be reasonable to say that the plaintiff could not have performed this transaction by an agency of his own without resorting to the service of a carrier, nor that it was necessary that the article should have been brought from any particular place.

The spirit of the contract and the essential point in this respect was that at the time and place fixed, an article as described should be in readiness for the defendant. Counsel for appellant argue that there was an attempt here to modify and vary the terms of the writing by parol. The argument is somewhat plausible but unsound. It does appear that the parties contracted in reference to this very engine and while the order called for an engine to be shipped, it was intended all the while to refer to *this* engine; but this is unimportant. The real question is as already stated, whether the plaintiff substantially complied with the contract by furnishing an engine which had already been shipped, and was there when the order was made. This question must be answered affirmatively, and it is not necessary to consider the parol proof that the parties intended the contract to refer to the engine in controversy. By the proof stated the defendant was placed in default, and he was called upon to show some excuse for his non-compliance with the contract.

This he sought to do by showing, first, that the written order omitted a provision mutually agreed upon that the defendant should have the right to countermand the order by or before the 12th of July; that this omission was through the fraud of plaintiff's agent and unknown to defendant, and that the defendant did countermand the order within the time ; and, second, that the engine would not work well. The defendant testified that he reserved the right to countermand the order, and that the order was so read to him by the agent of the plaintiff by whom it was written out, and that while defendant had a copy and could read, yet he did not read it before signing nor after, but supposing he had the right to countermand, he did so with'n the time limited.

There is no dispute that he countermanded, but the question is whether he had such right. He certainly had not under the terms of the order as written, nor would it be competent by oral proof to vary the writing so as to show that a positive and definite provision was really subject to a condition rendering it wholly optional with the defendant whether to make the purchase or not.

The offered proof tended to show that the instrument was wholly void and not binding upon the defendant, because a substantial feature of it was fraudulently omitted by the agent of the plaintiff. If so, and if defendant exercised proper diligence to know the contents of the paper before signing it and was deceived, he might well place his defense upon the ground that he did not execute the order as it now appears. But to do this it was necessary that he should verify his plea by affidavit, according to the provision of Sec. 34 of the Practice Act. In Lockridge v. Nuckolls, 25 Ill. 178, the Supreme Court say, that under this section " it has been uniformly held that the party is not permitted to deny the execution of the instrument, or put the other party to its proof, except in the mode prescribed. Until that provision is complied with, the mere production of the instrument proves itself without further evidence. And when admitted in evidence the maker has no right to deny or rebut by evidence the genuineness of its execution." The plaintiff objected to this evidence but was overruled. There being no plea verified by affidavit denying the execution of the instrument in writing sued on, this evidence was incompetent, and is not to be considered in support of the defense.

As to the second ground, the evidence tended to show that the engine would not work well when in the possession of one Caldwell, a former purchaser, by whom it was returned to the plaintiff. This was during the previous year, and there was some conflict in the proof as to the performance of the engine at that time. It appeared that since then it had been overhauled and put in good order, and the fair inference is, that whatever defects there may have been when in Caldwell's possession, it was reasonably fit for use when the defendant

Aultman & Co. v. Henderson.

bargained for it.   On referring to the terms of the order it will be found that, in case the engine, after trial, failed to fill the warranty, the purchaser was required to notify the agent and an opportunity was to be afforded to remedy the defect, and if it could not be made to fill the warranty, that part which failed should be returned and another furnished, which should perform the work, or the money and notes should be returned and no further claim should be made on the vendor. In view of this provision of the contract, the defendant was not justified in refusing to take the engine because it had not worked well when in the hands of Caldwell the year before. It had since been put in repair and was apparently and presumably in condition for effective service, and under the plain terms of the contract it was the duty of the purchaser to take it and give it a fair trial.

If it failed the vendor would have the right to make it good and sufficient or to return the consideration.   Had it been palpably worthless, so that any effort to work it was sure to fail, and useless expense and delay sure to follow, the case would be quite different, and in that event it may be the law would warrant the course taken by the defendant.   Upon the facts as they appear in the record, we are of opinion the finding should have been for the plaintiff.   It is urged, however, that at most, the plaintiff was entitled to merely nominal damages, and that the judgment ought not to be reversed to enable such recovery.   This position rests upon the assumption that the damages would be the difference between the contract price and the market value of the article.   This engine was not a new one and if it were it does not appear that it would have had a market price at the place of delivery.

It is not proved nor is it reasonable to infer that a second-hand article had a market value capable of ascertainment.   It is probable that while it might have been substantially as useful as if new, yet it could not readily be sold because it was not new.   It is therefore impossible to say that if the plaintiff was required to keep the engine his damages would be only nominal.   We are not to be understood, however, to hold that plaintiff was, upon the facts stated, required to retain the

property and recover damages for the failure of defendant to receive and pay for it.

Where a vendee sues a vendor for the non-delivery of goods, the measure of damages is usually the difference between the contract price and the market value at the time the goods should have been delivered.

Where a vendor sues a vendee for goods which have been delivered he may of course recover the contract price, but where there has been no delivery the vendor may store the goods for the vendee, giving him notice that he has done so and recover the full contract price, or he may keep the goods and recover the excess of the contract price above the market price at the time and place of delivery, or he may upon notice to the vendee proceed to sell the goods in their then condition, for the best price obtainable, and recover the loss if the goods fail to bring the contract price. Bagley v. Findlay, 82 Ill. 524; Parsons on Contracts, Vol. 2, page 484, 3d Ed.; Sedgwick on Measure of Damages, 3d Ed., 296.

As the case must be 'tried again we need express no opinion as to the proper measure of damages in the event of recovery. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*